**Michael ANDERSON,**
**Plaintiff–Appellant,**

**v.**

**The M.W. KELLOGG COMPANY, a**
**Delaware corporation,**
**Defendant–Appellee.**

**No. 86SA447.**

Supreme Court of Colorado,
En Banc.

Dec. 12, 1988.

Stephen C. Kaufman, Kidneigh & Kaufman, P.C., Denver, for plaintiff-appellant.

David B. Higgins, Long & Jaudon, P.C., Denver, for defendant-appellee.

MULLARKEY, Justice.

The plaintiff, Michael Anderson (Anderson) appeals from an order of the district court granting the defendant M.W. Kellogg Company's (Kellogg's) motion for summary judgment. The trial court ruled that two different statutes of repose contained in sections 13–80–127(1)(a) and 13–80–127.6(1)(a), 6 C.R.S. (1985 Supp.) barred

Anderson's claims. Anderson appeals[1] the application of the statutes of repose to his case and challenges the constitutionality of the statute of repose in section 13–80–127.-6. We uphold the constitutionality of that statute and affirm the trial court's grant of summary judgment based on the two statutes of repose.

I.

This case arises from an accident on November 29, 1982, in which Anderson lost his left arm in the C–7 conveyor at the Robinson Brick and Tile Company plant in Denver. The C–7 conveyor is an outdoor incline conveyor which connects two buildings. It transports clay on a belt up several stories from the grinding plant at the ground level to storage bins in the main brick plant. Defendant Kellogg's predecessor, the Swindell–Dressler Corporation, performed the engineering, design, and construction management for the entire Robinson plant, including the construction of the C–7 conveyor. The defendant subcontracted a portion of the C–7 conveyor work to the Union Supply Company, a co-defendant in this suit who is not a party to this appeal. The C–7 conveyor went into operation in 1962, twenty years before the accident occurred.

Anderson, as an employee of the Robinson Brick Company, supervised the operation of the C–7 conveyor. Because the conveyor belt had a tendency to slip, Anderson's job included "dressing" the belt with friction adhesive material to prevent slippage. The standard procedure for this task involved spraying an anti-slippage aerosol onto the belt at the "nip-point" where the underside of the belt met the head-pulley. There was a metal guard on the motor but no guard at the nip-point. When the accident occurred, Anderson was dressing the belt on the unguarded side at the top of the conveyor by holding a can of belt-dressing six to twelve inches away from the nip-point. His left hand was somehow forced into the nip-point; his left arm then was pulled in and amputated.

Anderson sued the defendant M.W. Kellogg Company, alleging that his injuries resulted from Kellogg's tortious conduct in the design, manufacture, assembly, and sale of the C–7 conveyor system. Anderson based his claims on theories of negligence, strict liability, misrepresentation, and breach of warranty.

Kellogg filed its answer on January 17, 1985, presenting as an affirmative defense the ten year statute of repose for "new manufacturing equipment" contained in section 13–80–127.6(1)(a), 6 C.R.S. (1985 Supp.) and alleging that the statute barred Anderson's claims because the C–7 conveyor had gone into operation more than ten years ago. Seven months later, on July 23, 1985, Kellogg filed a motion to amend its answer to include an additional defense that the statute of repose for improvements to real property contained in section 13–80–127(1)(a), 6 C.R.S. (1985 Supp.) precludes Anderson's claims. The trial court allowed Kellogg to amend its answer[2] and on March 17, 1986, the court upheld the constitutionality of the statute of repose for new manufacturing equipment, and granted Kellogg's motion for summary judgment based on both statutes of repose.

II.

This case presents a fact situation which falls within the overlap of two statutes of repose: one regarding improvements to real property and the other concerning new manufacturing equipment. Anderson contends that summary judgment for the defendant must be reversed because factual questions remain regarding Kellogg's status as the manufacturer of the conveyor and regarding Anderson's claim that his injury falls within the hidden defect exception to the statute of repose. We hold that both statutes of repose apply to this case to

---

1. Because of Anderson's constitutional challenge to section 13–80–127.6, the appeal was transferred from the court of appeals to this court pursuant to sections 13–4–102(1)(b) and –110(1)(a), 6A C.R.S. (1987).

2. Anderson argues that the trial court erred in allowing defendant to amend its answer, but in our view the trial court did not abuse its discretion under C.R.C.P. 15(a).

preclude Anderson's claims and uphold the entry of summary judgment.

### A.

Summary judgment, pursuant to C.R. C.P. 56(b), is proper when the pleadings, affidavits, depositions, or admissions establish that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law. *Churchey v. Adolph Coors Co.,* 759 P.2d 1336, 1340 (Colo.1988); *Ginter v. Palmer & Co.,* 196 Colo. 203, 205, 585 P.2d 583, 584 (1978). The party moving for summary judgment bears the burden of establishing the lack of a triable factual issue, and all doubts must be resolved against the moving party. *E.g., Southard v. Miles,* 714 P.2d 891, 895 (Colo.1986). A plaintiff may not rely on mere allegations of the complaint to establish a genuine issue of material fact in order to defeat a motion for summary judgment. *Meuser v. Rocky Mountain Hosp.,* 685 P.2d 776, 779 (Colo.Ct.App.1984). Summary judgment for a defending party may be based on the expiration of the applicable statute of limitations or statute of repose. *Persichini v. Brad Ragan, Inc.,* 735 P.2d 168 (Colo.1987) (summary judgment of product liability action upheld because applicable statute of limitations had run); *Hoary v. Lowe,* 734 P.2d 154, 155 (Colo.Ct.App.1987) (facts of case did not fit statutory exception to statute of repose and thus summary judgment was appropriate). With these principles in mind, we consider the case now before us.

### B.

█ Unlike a statute of limitations, a statute of repose may bar a claim before the injury occurs. *See, e.g., Southard v. Miles,* 714 P.2d at 898. A statute of repose limits the liability of a manufacturer or seller by setting a fixed time after the sale or first use of an item beyond which the manufacturer or seller of that item will not be held liable.

Kellogg contends that the statute of repose for improvements to real property in section 13–80–127(1)(a) bars Anderson's claims. The statute in relevant part provides:

> All actions against any architect, *contractor,* builder or builder vendor, *engineer,* or inspector performing or furnishing the design, planning, supervision, inspection, construction, or observation of construction of any improvement to real property shall be brought within two years after the claim for relief arises, and not thereafter, but in no case shall such an action be brought more than ten years after the substantial completion of the *improvement to real property. . . .*

(Emphasis added.)[3]

Anderson advances two arguments why this statute of repose does not apply to his situation. He argues, first, that the C–7 conveyor is not an "improvement to real property," and, second, that Kellogg acted as a "manufacturer" and as such is not covered by the statute. We address each of these contentions in turn.

█ Anderson argues that the C–7 conveyor is not an "improvement to real property" within the meaning of the term in the statute of repose. Instead, Anderson contends, the conveyor is manufacturing equipment which is not covered by the statute. Amicus curiae Colorado Trial Lawyers Association urges this court to adopt a test for defining an improvement as whether the equipment is "essential to the purpose or use of the property on which it is located," and argues that the issue should be a question of fact for the jury to decide. We disagree.

We addressed the issue of whether a product or piece of equipment is an improvement to real property in *Stanske v. Wazee Electric Co.,* 722 P.2d 402 (Colo. 1986). The meaning of "improvement to real property" in section 13–80–127 is one to be determined by reference to the "ordinary sense of the term," with the court's inquiry focusing primarily on "the nature

---

3. The current version of this statute, section 13–80–104, 6A C.R.S. (1987), is essentially identical to the previous section 13–80–127 except that

the statute of repose for improvements to real property has been shortened from ten to six years.

of the activity involved" with the equipment in dispute. *Stanske*, 722 P.2d at 406, 407. Whether a defendant's activities "constitute the design and construction of an improvement to real property is a *question of law*, for it involves the interpretation of the terms of a statute and the application of that statute to known facts." *Stanske*, 722 P.2d at 407 n. 2 (emphasis added). In *Stanske* we concluded that the electrical system in the grain elevator which had caused the injury to the plaintiff was "designed and constructed as an integral and essential part" of the property and thus was an improvement to real property covered by section 13–80–127. *Id.*

Turning to the facts of this case, it is apparent the C–7 conveyor is an improvement to real property. Deposition testimony by William Londen, vice-president of Robinson Brick Company, established that the C–7 conveyor functioned as the primary means of moving materials from the grinding plant to the main plant. Although there was more than one conveyor at the plant, the C–7 served a unique purpose in the operation of the plant by transporting brickmaking materials from one section of the plant to another, and, as such, it constituted "an integral and essential part" of the purpose of the property. Additionally, the sheer size of the conveyor alone (over two stories high and several hundred feet long) suggests the lack of mobility which typically characterizes an ordinary improvement. Thus, under the facts of this case, the C–7 conveyor properly is characterized as an improvement to real property, placing it squarely within the provisions of the statute of repose in section 13–80–127.

■ Anderson next claims that Kellogg's conduct with regard to the C–7 conveyor was that of a "manufacturer," and because section 13–80–127 does not include manufacturers in its list of protected persons, the statute is inapplicable to Kellogg. As set forth in the text above, the statute precludes, after a certain time limit, actions against "any architect, contractor, builder or builder vendor, engineer or inspector." § 13–80–127(1)(a). Anderson bases his argument on *Ciancio v. Serafini*, 40 Colo.

App. 168, 574 P.2d 876 (1977), *cert. denied,* 1978, in which the court of appeals noted that section 13–80–127 by its terms does not apply to surveyors, and concluded it did not apply to licensed engineers who are sued for their work done as a surveyor.

The fact situation here, however, is quite different from *Ciancio.* We need not be concerned with attempting to define any subtle distinctions between the defendant's role as a "manufacturer" of the conveyor and its conduct as a "contractor" or "builder" of the conveyor because the facts of this case show that the defendant was performing exactly the conduct described by the statute: "furnishing the design, planning, supervision, inspection, construction, or observation of construction of ... [an] improvement to real property." § 13–80–127(1)(a).

Undisputed testimony established that the defendant acted as both a general contractor and engineer for the construction of the plant and contracted out much of the construction work for the C–7 conveyor. The defendant exercised control and supervision over the design, construction, assembly, and installation of the C–7 conveyor. The agreement between Robinson and the defendant provided that the defendant would be responsible for "preparation of design or arrangement drawings, and specifications necessary for the contracting of construction and/or manufacture by others of ... architectural arrangements of buildings and all structural items not part of equipment, plant layout including equipment arrangement and material flow." Kellogg had no further involvement with the plant or the C–7 conveyor after its completion in 1962.

We therefore conclude that, as a matter of law, the defendant's conduct is covered by section 13–80–127(1)(a) and the statute bars Anderson's claims.

### III.

Although we find that Anderson's claims are within the statute of repose for improvements to real property, we also consider his assertion that his claims nevertheless should not be barred because they

come within a legislatively created exception to the statute of repose for new manufacturing equipment. If Anderson's claims do fall within an express statutory exception, then arguably he should be permitted to pursue his claims because the later enacted, more specific statute would prevail.

The statute of repose for new manufacturing equipment provides in part as follows:

Notwithstanding any other statutory provisions to the contrary, all actions for or on account of personal injury ... on account of the design, assembly, fabrication, production, or construction of *new manufacturing equipment,* or any component part thereof ... shall be brought within three years after the claim for relief arises and not thereafter ... [N]o such action shall be brought on a claim arising more than ten years after such equipment was first used for its intended purpose by someone not engaged in the business of manufacturing, selling, or leasing such equipment, except when the claim arises from injury due to *hidden defects* or prolonged exposure to hazardous material....

§ 13–80–127.6(1)(a) & (b) (emphasis added).[4]

It is undisputed that the C–7 conveyor is within the definition of "manufacturing equipment" in section 13–80–127.6(2), but Anderson contends the statute does not apply because it covers only "new" manufacturing equipment. Alternatively he argues that if the statute does apply, his injury falls into the "hidden defect" exception. Neither argument is persuasive.

### A.

■ Anderson points out that the legislature passed the new manufacturing equipment statute of repose in 1981, and argues that it should not have retroactive application to *old* manufacturing equipment in existence at the time the statute went into effect. We reject this argument as a strained interpretation of the statute which is contrary to accepted principles of statutory construction and to common sense.

The effective date of the statute was July 1, 1981, and as such it applies to *all claims* arising on or after July 1, 1981. Ch. 179, sec. 2, § 13–80–127.6, 1981 Colo. Sess.Laws 897, 898. The applicability of the statute depends not on whether the manufacturing equipment was new at the time the statute went into effect, but on whether the claims arose within ten years after the new manufacturing equipment was first used. Under Anderson's interpretation, only equipment which was put into use after 1981 would fall within the purview of the statute and the statute would not begin to apply to bar claims until 1992, more than ten years after the statute was enacted.

Neither the plain language of the statute nor its legislative history supports that construction. In construing a statute, we must give effect to the ordinary meaning of its language. If the language is ambiguous or subject to more than one interpretation, we must construe the statute in light of its legislative intent and purpose. § 2–4–203, 1B C.R.S. (1986); *Engelbrecht v. Hartford Accident & Indem. Co.,* 680 P.2d 231, 233 (Colo.1984). Assuming there is some ambiguity in this statute, we find that the legislative history rebuts Anderson's suggested interpretation.

The purpose of this statute, as expressed repeatedly by legislators throughout the committee hearings and floor debates on the bill, was to provide manufacturers with a time certain after which they would no longer be liable for injuries caused by the equipment they manufactured. *See* Tape Recording of Testimony before House Business Affairs and Labor Committee on Senate Bill 64, April 7, 1981, 53rd General Assembly; Tape Recording of Senate Floor Debate on Senate Bill 64, March 16, 1981, 53rd General Assembly. According to these discussions, the statute of repose was intended to begin barring claims immediately so the manufacturers' liability expo-

---

**4.** The current version of this statute, section 13–80–107, 6A C.R.S. (1987), is essentially the same except that the statute of repose for new manufacturing equipment has been shortened from ten to seven years.

sure and insurance costs could be delineated more clearly and there would be no more open-ended liability. Nothing in the legislative history suggests an intent to delay the effect of the statute for ten years. Accordingly, we hold the term "new manufacturing equipment" includes the C–7 conveyor.

## B.

Anderson next argues that his case falls within the "hidden defect" exception to the statute of repose because his injury was caused by Kellogg's failure to warn or to place guards on the C–7 conveyor. Anderson explains in his brief why he believes that the defect was hidden: "obviously, if no guards were ever installed, or warnings, or instructions on use [of the conveyor] ever issued, the defect is a hidden one." Our analysis of Anderson's argument must begin by considering what is a "defect" and what is a "hidden defect."

■ A "defect" does not mean a mere mechanical or functional defect but is anything that makes the product "unreasonably dangerous." *Wayda v. Comet Int'l Corp.*, 738 P.2d 391, 393 (Colo.Ct.App.1987) (citing Restatement (Second) of Torts § 402A (1965)). A manufacturer's failure to provide adequate warnings or instructions for a product may render that product defective and unreasonably dangerous. *Camacho v. Honda Motor Co., Ltd.*, 741 P.2d 1240, 1248 (Colo.1987), *cert. denied,* — U.S. ——, 108 S.Ct. 1067, 99 L.Ed.2d 229 (1988); *Palmer v. A.H. Robins Co., Inc.*, 684 P.2d 187, 199 (Colo.1984). A manufacturer's duty to warn encompasses both the duty to provide adequate instructions for safe use and the duty to provide warnings as to dangers inherent in improper use. 3 *American Law of Products Liability* 3d § 32.12 (1987); *Persichini v. Brad Ragan, Inc.*, 735 P.2d 168 (Colo.1987); *Uptain v. Huntington Lab, Inc.*, 723 P.2d 1322 (Colo.1986). Furthermore, the fact that the dangers of a product are "open and obvious" does not constitute a complete defense to a claim that the product is defective on a theory of failure to warn or failure to guard. *Camacho,* 741 P.2d at

1245; *Union Supply Co. v. Pust,* 196 Colo. 162, 173, 583 P.2d 276, 284 (1978). 2 *American Law of Products Liability* 3d §§ 28:70–28:74 (1987).

■ For a product to contain a "hidden defect" within the meaning of section 13–80–127.6, "it must have a defect that creates an unreasonably dangerous condition which is *not readily apparent."* *Wayda,* 738 P.2d at 393 (emphasis added). Although we agree with the court of appeals' description of what is a hidden defect, we do not agree with its conclusion in *Wayda* that the test for a hidden defect is a subjective test based on the user's knowledge of the existence of a defect. Our review of the legislative history, which apparently was not brought to the court of appeals' attention, leads us to reject the subjective test and to overrule *Wayda* in that respect.

Colorado's "hidden defect" exception to the statute of repose was modeled after a provision in the Model Uniform Products Liability Act. *See* Tape Recording of Testimony before House Business Affairs and Labor Committee on Senate Bill 64, April 7, 1981, 53rd General Assembly. The commentary to the "hidden defect" section in the Model Uniform Products Liability Act states that the exception was created

> for the unusual situation in which a product contains, at the time of delivery, a hidden defect that is not discoverable by a reasonably prudent user and does not manifest itself until after a ten year period has expired. *See Mickel v. Blackmon,* 252 S.C. 202, 166 S.E.2d 173 (1969) (plastic used on gearshift lost its resiliency when exposed to sunlight).

3 L. Frumer & M. Friedman, *Products Liability* § 9.04, at 9–165 to 166 (1988). The test, then, for purposes of section 13–80–127.6 is whether the defect was not readily apparent or discoverable by a reasonably prudent user.

■ The question raised by Anderson is whether the legislature intended to include the failure to warn within the exception it created for hidden defects. We conclude, based on the legislative history, that it did not so intend and that a product liability

claim based on failure to warn or to provide instructions which is not brought within ten years after the equipment is first used is barred by the provisions of the statute of repose in section 13–80–127.6.

The Senate considered and defeated an amendment which would have provided a limited exception to the statute of repose for "failure to warn." *See* Tape Recording of Senate Floor Debate on Senate Bill 64, March 16, 1981; Senate Journal, 53rd Sess., March 16, 1981, at 711 (majority of Senate rejected Ezzard amendment which would have provided an exception to statute of repose if a manufacturer or seller became aware of a defect in a product and "fail[ed] to notify or warn a known user of the product"). The Senate declined to include a failure to warn exception to the statute of repose because of fears articulated by the Senators that it would create too broad an exception, encourage excessive litigation, and frustrate the purpose of the statute. In view of this express rejection of an exception for failure to warn, we cannot find that a claim based on failure to warn fairly falls within the hidden defect exception of the statute of repose.

■■■ We next examine the issue of whether failure to place guards to protect a user from the dangerous areas of a machine may constitute a "hidden defect" within the meaning of the exception to the statute of repose. Failure to adequately guard a dangerous machine can render that machine defective. *See Moorer v. Clayton Mfg. Corp.*, 128 Ariz. 565, 627 P.2d 716, 719 (Ariz.Ct.App.1981), *cert. denied*, 454 U.S. 866, 102 S.Ct. 328, 70 L.Ed.2d 167 (1981) (failure to include guards or "safety devices at the 'nip-point' can constitute a defective condition unreasonably dangerous to the user"); *Union Supply Co. v. Pust*, 196 Colo. 162, 173, 583 P.2d 276, 282 (1978) (failure to include safety guards or a cleaning device at the nip-point in conveyor could be a design defect so as to defeat motion for summary judgment).

Although failure to guard may constitute a defect, failure to guard an *open* and *obvious* danger does not constitute a *hidden* defect within the meaning of this statute.[5] The evidence established that Anderson's injury was caused by an openly and obviously dangerous part of the C–7 conveyor, and not by any undiscovered defect of which Anderson, as a reasonably prudent user, was unaware. The danger of the unguarded nip-point was readily apparent and Anderson admitted that he knew he would be injured if his arm contacted the nip-point. We determine therefore, as a matter of law, that failure to guard an obviously dangerous part of the C–7 conveyor was not a *hidden* defect of which a reasonably prudent user was unaware.

Our ruling here is consistent with *Urban v. Beloit Corp.*, 711 P.2d 685 (Colo.1985), in which we addressed the interpretation of the hidden defect exception to this statute of repose in a similar context of an employee injured by machinery on the job. However, in *Urban*, we reversed the trial court's grant of summary judgment for the defendant manufacturer because a genuine factual issue remained of whether the calendar stack machine had hidden defects which caused plaintiff's injuries. In the instant case, there were no allegations of mechanical defects which were not readily apparent to a reasonably prudent user. Instead, the only defect alleged by Anderson is the failure to warn or to place guards over an obviously dangerous part of the machine. As we previously stated, this does not constitute a *hidden* defect within the meaning of this statute.

In conclusion, Anderson's claims of failure to warn, to issue adequate instructions, or to place guards cannot properly be characterized as a "hidden defect" so as to fall within the exception to the statute of repose in section 13–80–127.6.

## IV.

■■■ Lastly, Anderson contends that the statute of repose for new manufacturing equipment in section 13–80–127.6 violates

---

5. We note that we are not foreclosing the possibility that failure to guard a *non*-obvious hazard may constitute a hidden defect. That fact situation, however, is not before us.

his right to equal protection as guaranteed by the Fourteenth Amendment because it makes arbitrary and irrational distinctions between classes of plaintiffs.[6] Anderson argues that a plaintiff like himself who was injured by an unguarded machine should not be treated differently from injured plaintiffs who come within one of the enumerated exceptions to this statute of repose. These exceptions are injuries from: 1) hidden defects, 2) prolonged exposure to hazardous material, 3) intentional misrepresentation, and 4) fraudulent concealment. § 13–80–127.6(1)(b) & (c).

It is well established that a statute is presumed constitutional, and the party challenging it has the burden to establish its unconstitutionality beyond a reasonable doubt. § 2–4–201, 1B C.R.S. (1980); *Parrish v. Lamm*, 758 P.2d 1356, 1364 (Colo. 1988); *Pizza v. Wolf Creek Ski Dev. Corp.*, 711 P.2d 671, 675 (Colo.1985); *Curnow v. Yarbrough*, 676 P.2d 1177, 1185 (Colo. 1984). Except for cases involving fundamental rights or suspect classifications, equal protection requires only that the distinction made be rationally related to legitimate governmental purposes. *Pizza*, 711 P.2d at 679; *Curnow*, 676 P.2d at 1186; *People v. Velasquez*, 666 P.2d 567 (Colo. 1983), *appeal dismissed, Velasquez v. Colorado*, 465 U.S. 1001, 104 S.Ct. 989, 79 L.Ed.2d 223 (1984). Classes can be treated differently if the unequal treatment is based on reasonable differences. *Pizza*, 711 P.2d at 679. For a party to meet its burden to invalidate such a classification, "there must be no set of facts which can reasonably justify it." *Id.*

The statute of repose for new manufacturing equipment in section 13–80–127.6 involves neither a suspect class nor a fundamental right. *See Bowman v. Niagara Mach. & Tool Works, Inc.*, 832 F.2d 1052 (7th Cir.1987) (products liability statute of repose does not deny access to courts so as to implicate a fundamental right requiring strict scrutiny of equal protection challenge); Annotation, *Validity and Con-

struction of Statute Terminating Right of Action for Product–Caused Injury at Fixed Period after Manufacture, Sale, or Delivery*, 25 A.L.R. 4th 641, at § 5 (1983 & Supp.1988) (numerous courts have upheld validity of statutes of repose against equal protection challenge).

The classifications enumerated as the four exceptions to the statute of repose bear a reasonable relationship to the legislative objectives of protecting the rights of certain types of injured plaintiffs while limiting the liability exposure of manufacturers and vendors of equipment. The first two exceptions to section 13–80–127.6, for hidden defects and prolonged exposure to hazardous material, are designed to cover situations with a latency period in which a plaintiff may not be able to discover the injury or the cause of the injury for an extended period of time. The other two exceptions, for intentional misrepresentation and fraudulent concealment, demonstrate the legislature's justifiable reluctance to extend the protection of the statute of repose to manufacturers whose intentionally tortious conduct harms a product user. The ten year statute of repose for all other situations is reasonable in light of the fact that most manufacturers' and sellers' involvement with the manufacturing equipment generally ends after the equipment is sold. The repose provisions also serve to eliminate tenuous claims involving older products or equipment for which evidence of defective conditions may be difficult to produce.

In our view, the distinction between plaintiffs who fall within an exception to the statute of repose and those who do not is reasonable, and we therefore conclude that section 13–80–127.6 does not violate the principle of equal protection.

## V.

To summarize our holding, we find that the statutes of repose for improvements to real property and for new manufacturing

---

**6.** Anderson does not challenge the constitutionality of the statute of repose for improvements to real property contained in section 13–80–127, 6 C.R.S. (1985 Supp.); we upheld the constitu-

tionality of that statute in *Criswell v. M.J. Brock & Sons, Inc.*, 681 P.2d 495 (Colo.1984) and *Yarbro v. Hilton Hotels Corp.*, 655 P.2d 822 (Colo. 1982).

equipment both foreclose Anderson's product liability claims of injury from the twenty-year-old conveyor. The statute of repose for new manufacturing equipment does not violate equal protection because it does not arbitrarily distinguish between classes of plaintiffs. The judgment of the district court is affirmed.