Donald L. **NIEMET** and Connie **Niemet, Plaintiffs–Appellees,**

and

**State Compensation Insurance Authority, Plaintiff–Intervenor–Appellee,**

v.

**GENERAL ELECTRIC COMPANY, a New York corporation, doing business in Colorado, Defendant–Appellant.**

No. 91CA0198.

Colorado Court of Appeals, Div. IV.

June 25, 1992.

Rehearing Denied July 23, 1992.

Certiorari Granted Jan. 4, 1993.

Bill E. Landsberg and Kenneth A. Matthews, Colorado Springs, for plaintiffs-appellees.

Watson, Nathan & Bremer, P.C., Mark H. Dumm and Heidi J. Hugdahl, Denver, for defendant-appellant.

Opinion by Judge JONES.

Defendant, General Electric Company, appeals the judgment entered against it and in favor of plaintiffs, Donald and Connie Niemet. It also appeals a post-trial order relative to the determination of damages. We affirm.

Donald Niemet, while acting within the course of his employment as a meter specialist for the City of Colorado Springs (the City), suffered severe burns and injuries as a result of an explosion and an electrical fire at an electric metering station owned and operated by the City. Plaintiffs brought suit against defendant, the manufacturer of the electrical transformer used in the metering station, alleging that the transformer was defectively manufactured and then placed in service. Defendant denied liability on the ground that the proximate cause of plaintiffs' injuries were the negligent acts of a non-party, the City, which, it claimed, negligently installed, maintained, and failed to ground the electrical distribution system.

The jury awarded plaintiffs $1 million for non-economic damages and apportioned liability by affixing 10% of the fault to Mr.

Niemet, 35% to defendant, and 55% to the City.

Pursuant to § 13–21–102.5(3)(a), C.R.S. (1987 Repl.Vol. 6A), the trial court determined that clear and convincing evidence supported the conclusion that the non-economic damages should be capped at $500,000. The court denied defendant's post-trial motions and ordered that the final award of non-economic damages be calculated by first applying the pro-rata proportions of liability against the total award of $1 million and by then imposing the $500,000 statutory cap pursuant to § 13–21–102.5. Judgment against defendant was, thus, entered in the amount of $421,750.

## I.

■ Defendant first contends that the trial court erred in its interpretation and application of the non-economic damages cap established by § 13–21–102.5, C.R.S. (1987 Repl.Vol. 6A). It argues that the terms of the statute require that the statutory cap must be applied to a jury award before pro-rata liability is apportioned. We do not agree.

Section 13–21–111.5, C.R.S. (1987 Repl. Vol. 6A) abolished joint and several liability and replaced that concept with pro-rata liability, as follows:

(1) In an action brought as a result of death or an injury to person or property, no defendant shall be liable for an amount greater than that represented by the degree or percentage of negligence or fault attributable to such defendant that produced the claimed injury, death, damage, or loss, ...

(2) The jury shall return a special verdict ... determining the percentage of negligence or fault attributable to each of the parties and any persons not parties to the action of whom notice has been given.... to whom some negligence or fault is found....

Pursuant to this statute, the relative degree of negligence of joint tortfeasors is to be used to determine their pro-rata share of the damages. However, the General Assembly failed to define how liability is to be apportioned when this statute operates in conjunction with the provisions of § 13–21–102.5, C.R.S. (1987 Repl.Vol. 6A).

Section 13–21–102.5 limits the amount of non-economic damages that may be awarded as follows:

(1) The general assembly finds, determines, and declares that awards in civil actions for non-economic losses or injuries often unduly burden the economic, commercial, and personal welfare of persons in this state; therefore, for the protection of the public peace, health, and welfare, the general assembly enacts this section placing monetary limitations on such damages for non-economic losses or injuries.

. . . .

(3)(a) In any civil action in which damages for non-economic loss or injury may be awarded, the total of such damages shall not exceed the sum of two hundred fifty thousand dollars, unless the court finds justification by clear and convincing evidence therefor. In no case shall the amount of such damages exceed five hundred thousand dollars.

When the statutory provisions are read together, there is no explicit indication as to whether pro-rata liability, provided for in § 13–21–111.5, should be apportioned before or after damages are capped as required by § 13–21–102.5.

■ The essential dilemma is whether to construe § 13–21–102.5 such that damages are limited to a maximum recovery of $500,000 for each *award* or for each *action*. If the non-economic damages cap applies to each action, then there is support for defendant's argument that the cap should first be applied to the entire sum of the recoverable damages in the action and then, secondly, liability should be apportioned. If, as plaintiff argues, the non-economic damages cap applies to each award, then liability should first be apportioned in relation to the total damages and then, secondly, any damage award against a specific party in excess of the statutory limit should be capped.

A review of the legislative history for § 13–21–102.5 reveals that the General Assembly did not anticipate this issue. However, the bill's history does indicate that legislators repeatedly expressed concern for protection of the rights of plaintiffs to recover damages in the context of limited damage awards. And, in fact, the original language of the bill was amended to allow the court to find, "by clear and convincing evidence," § 13–21–102.5(3)(a), that damages may exceed $250,000 because, "if we don't, we're going to create a new class of victims." Hearings on S.B. 67–1986 before the Senate Business Committee, 56th General Assembly, Second Session (February 19, 1986) (statements made during period from 1:45–2:53 p.m.).

In the absence of legislative history to the contrary, we are persuaded that plaintiffs' argument best satisfies the declaration of intent contained in § 13–21–102.5(1), wherein the General Assembly has stated that "*awards* ... for non-economic losses ... often unduly burden ... *persons* in this state." (emphasis added) This expression of the public policy underlying the statute demonstrates the General Assembly's concern with protecting individual defendants, or "persons," from responsibility for paying excessive amounts because of "awards" representing non-economic damages.

The statutory language does not evince an intent on the part of the General Assembly to allow individual defendants who have been adjudged as negligent to escape accountability for their negligence based on circumstances concerning any other negligent "person," whether or not that "person" is a party. Additionally, the language of the statute does not express a public policy that deserving plaintiffs may not recover for non-economic damages beyond the prescribed level of protection from "unduly [burdensome]" awards afforded to individual "persons." Thus, the intent of § 13–21–102.5 is not to allow "persons" to escape accountability but, rather, is to limit the amount of damages for which each such party must account.

Moreover, a construction of § 13–21–102.5 which caps each separate non-economic damage award, rather than awards for entire actions, averts subversion of the intended effect of § 13–21–111.5(2), pursuant to which the jury must determine the "percentage of negligence or fault attributable to each of the parties and any persons not parties to the action."

Here, as the trial court observed, with sound logic, if the $500,000 cap is applied before damages are apportioned, defendant's liability for the total non-economic damages determined to have been incurred is reduced from the jury's apportionment of 35% to 17.5%, because the defendant would be responsible only for 35% of 500,000 (or 17.5% of $1 million), rather than 35% of $1 million. By applying the cap to an award, rather than an entire action, the jury's apportionment of fault percentages is appropriately retained pursuant to § 13–21–111.5, while any award in excess of $500,000 is appropriately capped pursuant to § 13–21–102.5.

■ Our construction here does no more than carry out the unimpeachable obligation of this court to harmonize the effect of, and to buffer the friction between, competing statutes applicable to the same set of facts. *Subsequent Injury Fund v. Grant*, 812 P.2d 1183 (Colo.App.1990).

We also note that the enactment of §§ 13–21–102.5 and 13–21–111.5 represents a departure from the formerly prevailing common law doctrine of unlimited joint and several liability. And, until the common law is repealed by legislative authority, it "shall be the rule of decision, and shall be considered as of full force." Section 2–4–211, C.R.S. (1980 Repl.Vol. 1B).

Here, the General Assembly has expressed the intent to apportion liability fairly while protecting defendants from the cost of excessive non-economic damage awards. But, there is no express intent to repeal the common law doctrine that plaintiffs may otherwise recover the amount of damages incurred by virtue of negligence on the part of individual defendants. Thus, application of the common law necessitates that the statutes be strictly construed to provide the intended remedy to defendants

while avoiding a construction that would derogate the common law doctrine allowing plaintiffs to recover for their injuries.

Thus, we construe the statutes at issue so as to reach a reasonable result which harmonizes the effects of the common law and the legislative authority, as required whenever a statute does not abrogate common law either explicitly or as a result of inconsistent language or applicability. *Vogts v. Guerrette*, 142 Colo. 527, 351 P.2d 851 (1960); *Shoemaker v. Mountain States Telephone & Telegraph Co.*, 38 Colo.App. 321, 559 P.2d 721 (1976).

Accordingly, we perceive no error in the trial court's determination that liability should be apportioned pursuant to § 13–21–111.5, C.R.S. (1987 Repl.Vol. 6A) before damages for each award are capped pursuant to § 13–21–102.5, C.R.S. (1987 Repl.Vol. 6A).

### II.

Defendant next contends that the trial court erred by denying its motion for a directed verdict on the ground that the plaintiffs' claim is barred by the Colorado statute of repose, § 13–80–107, C.R.S. (1987 Repl.Vol. 6A). We are not persuaded.

While we agree with defendant that the transformer is an article of "new manufacturing equipment" as contemplated for inclusion within the ambit of the statute of repose, *see Smith v. Home Light & Power Co.*, 734 P.2d 1051 (Colo.1987), we do not agree that plaintiffs' action here is barred. We conclude that the statute does not apply to bar an action when, as here, the claim arises from injury due to hidden defects.

The statute of repose bars any action being brought:

on account of the design, assembly, fabrication, production, or construction of new manufacturing equipment ... on a claim arising more than seven years after such equipment was first used for its intended purpose by someone not engaged in the business of manufacturing, selling, or leasing such equipment, *except when the claim arises from injury due to hidden defects....*

Section 13–80–107(1)(a) and (b), C.R.S. (1987 Repl.Vol. 6A) (emphasis added).

The evidence was undisputed that the malfunctioning transformer in question contained a defect that was present at the time of manufacture and that this defect was not discovered, and could not have been discovered, until the entire transformer was cut in half. Thus, "the defect was not readily apparent or discoverable by a reasonably prudent user," and the hidden defect exception to the statute of repose operates to prevent the statute from barring plaintiffs' action. *See Anderson v. M.W. Kellogg Co.*, 766 P.2d 637 (Colo.1988).

Accordingly, the trial court did not err in denying defendant's request for a directed verdict on the grounds that plaintiffs' action was barred by the statute of repose.

### III.

Regarding defendant's contention that the intervening cause of plaintiffs' injuries was the City's failure properly to ground the electrical equipment and the transformer, we conclude that there was sufficient evidence in the record to submit this question to the jury.

Furthermore, the finder of fact was responsible for determining whether there was an intervening act which would defeat plaintiffs' strict liability claim or whether a potentially "intervening" act was only an additional proximate cause of plaintiffs' injuries, thereby making the parties to plaintiffs' injuries joint tortfeasors. *Bradford v. Bendix–Westinghouse Automotive Air Brake Co.*, 33 Colo.App. 99, 517 P.2d 406 (1973). *See also In re Swine Flu Immunization Products Liability Litigation*, 495 F.Supp. 1188 (D.Colo.1980).

Likewise, we conclude that the determination of plaintiff's future earnings was properly before the jury.

The judgment and orders of the trial court are affirmed.

CRISWELL and DAVIDSON, JJ., concur.