Eladio **VILLALOBOS**, et al., Plaintiffs,

v.

**HEIDELBERGER DRUCKMASCHIEN ARTIENGESELLSCHAFT**, et al., Defendants.

No. 93–C–1097.

United States District Court, D. Colorado.

Aug. 12, 1994.

Michael Cooksey, Cooksey & Cooksey, P.C., Douglas D. Koktavy, Charles Torres, Torres & Koktavy, P.C., Denver, CO, Derrel Joe Luce, Waco, TX, for plaintiffs.

Scott S. Nixon, Todd E. Kastetter, Pryor, Carney and Joyhnson, P.C., Englewood, CO, for defendants.

## MEMORANDUM OPINION AND ORDER

CARRIGAN, District Judge.

Plaintiffs Eladio and Regina Villalobos commenced this action against the defendants Heidelberger Druckmaschien Artiengesellschaft (Heidelberger), a German corporation, and Heidelberg West, Inc. (Heidelberg West), a California corporation. Plaintiffs assert claims of product liability, negligence and loss of consortium, and seek punitive as well as compensatory damages. Defendants have filed a motion for summary judgment pursuant to Fed.R.Civ.P. 56. Plaintiffs oppose the motion.

The issues have been briefed and oral argument would not facilitate the decision process. Jurisdiction exists under 28 U.S.C. § 1332.

## I. BACKGROUND.

From 1983 through 1991, Eladio Villalobos worked for Scott Printing Company in Denver, Colorado. His responsibilities included the operation of a "SORK Model" printing press manufactured by Heidelberger and serviced by Heidelberg West.

On June 5, 1991, while operating the SORK Model press, the plaintiff noticed a blemish on the finished product that was caused by a particle of debris, or "hickie," on the plate cylinder. Plaintiff reached into the unguarded area where the plate cylinder comes into contact with the inking rollers, known as the "nip-point," in an attempt to remove, or "chase," the hickie using a three-by-four inch piece of cloth, called a "hickie picker." Plaintiff's right forearm was wrenched into the press between the plate cylinder and the inking rollers. Approximately two hours later, the plaintiff's arm was freed; however, it had been crushed, resulting in permanent injury and unceasing pain and discomfort.

## II. ANALYSIS.

■ Summary judgment is proper if the pleadings, depositions, and affidavits demonstrate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The party opposing a motion for summary judgment may not rest upon allegations of the complaint alone, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). A factual dispute is material only if, under governing law, its resolution might affect the outcome of the action. A factual dispute is genuine if a reasonable fact finder could return a verdict for the nonmoving party. *Id.*

Defendants contend that summary judgment is appropriate because the plaintiffs' claims are barred by Colo.Rev.Stat. § 13–80–107. The relevant part of that statute provides:

**13–80–107. Limitation of actions against manufacturers, sellers or lessors of new manufacturing equipment.** (1)(a) Notwithstanding any statutory provision to the contrary, all actions for or on account of personal injury ... brought against a person or entity on account of the design, assembly, fabrication, production, or construction of new manufacturing equipment, or any component part thereof, or involving the sale or lease of such equipment shall be brought within the time provided in section 13–80–102 [two years] and not thereafter.

(b) Except as provided in paragraph (c) of this subsection (1), no such action shall be brought on a claim arising more than seven years after such equipment was first used for its intended purpose by someone not engaged in the business of manufacturing, selling, or leasing such equipment, except when the claim arises from injury due to hidden defects or prolonged exposure to hazardous material.

(c) The time limitation specified in paragraph (b) of this subsection (1) shall not apply if the manufacturer, seller, or lessor intentionally misrepresented or fraudulently concealed any material fact concerning said equipment which is a proximate cause of the injury. . . .

■ Sub-section 13–80–107(1)(b) creates a statute of repose rather than a statute of limitations. A statute of repose may bar a claim before an injury occurs because it sets a time after the sale or first use of a product beyond which the manufacturer cannot be held liable. *Anderson v. M.W. Kellogg Co.*, 766 P.2d 637, 640 (Colo.1988).

■ To determine whether § 13–80–107(1)(b) bars the plaintiffs' claims, I must resolve four issues. The first is whether Heidelberg West is within the scope of the statute of repose. Although the statute clearly applies to Heidelberger as the manufacturer and seller of the press, the plaintiffs contend that Heidelberg West is outside its scope.

Both the title and text of § 13–80–107 indicate that the Colorado legislature intended the statute to apply exclusively to "manufacturers, sellers, or lessors." Heidelberg West did not manufacture, sell or lease the

printing press in question. Therefore, I conclude that Heidelberg West may not avail itself of the statute of repose.[1] Accordingly, Heidelberg West's motion for summary judgment will be denied.

■ The second issue is whether the printing press was "manufacturing equipment" within the meaning of § 13–80–107(2), which reads:

> As used in this section, "manufacturing equipment" means equipment used in the operation or process of producing a new product, article, substance, or commodity for the purposes of commercial sale and different from and having a distinctive name, character, or use from the raw or prepared materials used in the operation or process.

Heidelberger contends that the press falls within the statutory definition. Plaintiffs do not respond directly to that contention, but the court will grant the nonmoving party the benefit of all favorable inferences, as required in considering a motion for summary judgment. *Liberty Lobby,* 477 U.S. at 255, 106 S.Ct. at 2513–14.

In construing a statute, the court "must give effect to the ordinary meaning of its language." *Eaton v. Jarvis Prods. Corp.,* 965 F.2d 922, 927 (10th Cir.1992). One legislator aptly summarized the section's ordinary meaning: "[W]hen you're talking about manufacturing equipment, you're talking about producing something that's then going to be sold by the person who produced it." *Id.* at 927–28 (citing Transcription of Recorded Discussion Senate Bill 64, House Committee on Judiciary, April 23, 1981).

The end-product of the SORK Model press (*i.e.,* material printed to the specifications of Scott Printing's customers) has a character and use distinct from the raw materials used in the printing operation, and the final product is prepared exclusively for commercial sale. Therefore, I find and conclude that the SORK Model press falls within the statutory definition of "manufacturing equipment."

■ The third issue is whether the plaintiff's claim for injury arose from a "hidden defect." Colo.Rev.Stat. § 13–80–107(1)(b). Heidelberger asserts that the unguarded nippoint was an open and obvious danger, and therefore the "hidden defect" exception provided in § 13–80–107(1)(b) is not applicable. Plaintiffs respond that the hidden defect exception applies because the design of the press without a guarded hickie picker "made the entire press, while operating, an unreasonably dangerous condition."

The hidden defect exception does not apply unless a product has a defect that is "not readily apparent or discoverable by a reasonably prudent user." *Anderson,* 766 P.2d at 643.[2] "Although a failure to guard may constitute a defect, failure to guard an *open* and *obvious* danger does not constitute a *hidden* defect" within the contemplation of the statute of repose. *Id.* at 644 (emphasis in original).

Here, the evidence establishes that the danger of the nip-point was readily apparent. The nip-point was exposed and unguarded. The ink rollers and plate cylinder spun at what the plaintiffs call "vertiginous speed." The printing press had labels (complete with hazard pictograms) that exhorted: "DO NOT REMOVE WASTE WHILE MACHINE IS IN MOTION" and "MOVING ROLLERS CAN CAUSE SERIOUS PERSONAL INJURY. STAY AWAY FROM THEM." Finally, Mr. Villalobos has admitted that the nip-point was "open, obvious, and dangerous."[3] Based on these facts, I find and

---

1. Heidelberg West argues that the language "all actions ... brought against a person or entity" makes the statute applicable to it. I disagree. The "person or entity" to which the language refers is a person or entity *who is a manufacturer, seller, or lessor.*

2. The *Anderson* case involved Colo.Rev.Stat. § 13–80–127.6. The current version, § 13–80–107, is substantively the same, except that the statute of repose has been shortened from ten to seven years.

3. Plaintiffs claim that this admission is not material because Mr. Villalobos did not admit that the condition at issue "exposed him to being violently wrenched into the press." I conclude, however, that an admission that the defect was "open, obvious, and dangerous" satisfies the requirement that the defect be "readily apparent."

Plaintiffs also claim that the admission is not material because other press operators chased hickies using the same procedure employed by Mr. Villalobos. Plaintiffs state: "What is better

conclude that the danger presented by the unguarded nip-point was readily apparent and/or discoverable by a prudent user.[4]

■ The final issue is whether the defendant "intentionally misrepresented or fraudulently concealed any material fact" about the peril posed by the unguarded nip-point. Colo.Rev.Stat. § 13–80–107(1)(c). Heidelberger asserts that the exception for intentional misrepresentation and fraudulent concealment, based on § 13–80–107(1)(c), is not applicable. Plaintiffs respond that the exhibits (which include service work-orders, letters to Scott Printing, and internal corporate memoranda) establish intentional misrepresentation and fraudulent concealment of the press's hazards.

■ Generally, to show fraud by misrepresentation or concealment, a plaintiff must show reliance on a material false representation, or that action was taken relying on the assumption that the concealed fact did not exist or was different from what it actually was, and that the reliance was justified. *Dime Box Petroleum Corp. v. Louisiana Land & Exploration Co.*, 717 F.Supp. 717, 723 (D.Colo.1989) (citing *Trimble v. City & County of Denver*, 697 P.2d 716 (Colo.1985)), *aff'd*, 938 F.2d 1144 (10th Cir.1991).

Here, the relevant exhibits do not demonstrate that Heidelberger made false representations about the danger of the unguarded nip-point. As noted, warning labels affixed to the printing press specifically addressed the type of injury that the plaintiff suffered. Defendants mailed Scott Printing letters that evince both a recognition of the potential danger of the SORK Model press and a desire that Scott Printing retro-fit the press with guards.[5] One letter offered "state-of-the-art" guarding at special discounts, urging an affirmative response. Another letter "strongly recommended" investment in contemporary guarding standards, noting that "serious injuries ... can be prevented!" Yet another offered safety training classes and enclosed modern equipment press instructions and printed safety literature. Having reviewed all of the relevant exhibits, I find and conclude, for purposes of the instant motion, that Heidelberger did not intentionally misrepresent or fraudulently conceal any material fact related to the danger of the unguarded nip-point.[6]

Because none of the exceptions to the statute of repose are applicable here, I find and conclude that Heidelberger is entitled to the protection of Colo.Rev.Stat. § 13–80–107, and the plaintiffs' claims against it are barred. Heidelberger's motion for summary judgment will be granted.

Accordingly, IT IS ORDERED that:

---

objective evidence of reasonable and prudent use than the actual practices of experienced operators?" I conclude, however, that neither "reasonable and prudent use" nor "the actual practices of experienced operators" is relevant in deciding whether the defect was "hidden" for the purposes of the statute of repose.

4. Because I have concluded that the nip-point was an open and obvious danger, I further conclude that the failure to guard the nip-point does not fall within the hidden defect exception.

Plaintiffs also contend that a manufacturer's failure to provide warnings or instructions for a product may render that product defective and unreasonably dangerous. *Anderson*, 766 P.2d at 643. However, a failure to warn or provide instructions is not within the statutory exception created for hidden defects. *Id.* The *Anderson* court held that a product liability action based on failure to warn or provide instructions is barred if not brought within the time limits of the statute of repose. *Id.* at 643–44. Plaintiffs did not assert a claim for failure to warn or provide instructions within seven years of 1972, the year

the press first was used for its intended purpose by Scott Printing, so that claim is barred.

5. Although the letters predominantly are on Heidelberg West stationery, Heidelberger recognized the need to retro-fit the SORK Model press with a hickie picker guard as early as 1980. Heidelberger designed and manufactured the guards, and offered them to Heidelberg West at a discount.

6. Plaintiffs also apparently argue that Heidelberger breached its duty to remedy a defect, and that that breach constitutes an intentional misrepresentation or fraudulent concealment. Colorado law imposes a duty to remedy a defective product. *See Downing v. Overhead Door Corp.*, 707 P.2d 1027, 1033 (Colo.Ct.App.1985). However, a breach of the duty to remedy a defect is not an intentional misrepresentation or fraudulent concealment for the purpose of the statute of repose. If the Colorado legislature had wanted to create an exception for breach of the duty to remedy, it easily could have so stated.

(1) Heidelberg West's motion for summary judgment is denied;

(2) Heidelberger Druckmaschien Artiengesellschaft's motion for summary judgment is granted; and

(3) The parties and their counsel are ordered to meet and confer within seven days of this order in a good faith attempt to settle the case without further litigation, expense or delay. The parties shall report to this court in writing within eleven days of this order, stating the results of their settlement negotiations and whether a conference before a Magistrate Judge or some other alternative dispute resolution proceeding, would facilitate settlement.