**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 3, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

JACOB ROBERT SCHNEIDER,

Plaintiff-Appellant,

v.

CATERPILLAR, INC.,

Defendant-Appellee.

No. 08-1111
(D.C. No. 1:06-CV-02227-LTB-BNB)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **HOLMES**, **ANDERSON**, and **BALDOCK**, Circuit Judges.

---

Plaintiff-appellant Jacob Robert ("J.R.") Schneider appeals the district

court's grant of summary judgment to defendant Caterpillar, Inc., on his claim of

product liability. The case stems from an accident in 2004 in which

Mr. Schneider was crushed while riding on a screed, a piece of asphalt-paving

---

[*]      After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

equipment manufactured by Caterpillar.[1]  In granting summary judgment to Caterpillar, the district court held that the screed was "manufacturing equipment" as defined under Colorado law, and that, as a matter of law, it did not contain a "hidden defect."  Colorado's statute of repose therefore barred Mr. Schneider's claims.  We reverse.

To understand this case, it is helpful to know a little about the asphalt-paving process, particularly the function and operation of screeds.  In the paving process, hot mix asphalt is poured into a hopper attached to the front of the paver.  The hot mix is then moved by a conveyor to the rear of the paver where augers distribute the hot mix to the screeds.  A screed is an attachment at the rear of the paver which applies the asphalt at the desired depth and then compacts and smooths it.  After the paver/screeds make their pass depositing asphalt, rollers follow to compact and roll the asphalt to the proper density and surface texture.

The paver involved in this accident had two screeds, one attached to each side of the paver.  It takes three people to run this paving machine, an operator located atop the central paver, and one operator who stands on each screed.  The screeds can be extended or retracted by means of a hydraulic device on either side

---

[1]     It is undisputed that, although Caterpillar, Inc., is the named defendant, the products involved in this case were actually manufactured by Caterpillar Paving Products Inc., a wholly owned subsidiary of Caterpillar.  Early on, Caterpillar agreed that it was unnecessary for Mr. Schneider to amend his complaint to correctly identify defendant.

to allow for varying widths of asphalt application. The screed extensions can be extended or retracted independently. The right screed extension can be operated by a toggle switch on the far right side of the screed and the left screed extension can be operated by a toggle switch on the far left side of the screed. In addition, there is a panel box mounted on each screed with a toggle switch, and there are switches mounted on the paver-operator's control panel. Thus, the hydraulics are operated by a total of six extension-control-toggle switches, three for each side. The screed includes an extension tube that extends or contracts with the screed when the hydraulics are operated.

Once the screed is activated by one of the toggle switches, the movement cannot be overridden or interrupted by another switch. To stop the motion of the screed, the same toggle switch that initiated the action must be used to reverse it. Neither the screed nor the paver has an emergency or master-control switch that can interrupt or override the activation or movement of the screed.

At the time of the accident, Mr. Schneider was an employee of LaFarge North America and was working as part of an asphalt-paving crew, although, on the day of the accident, he was not working on either the paver or the screed. Instead, he was assigned to operate a landscape tractor and to use a rake and shovel to groom the new asphalt so that joints where the new asphalt abutted earlier laid asphalt or concrete gutters would be sealed and smooth. After the paver completed one particular pass and was backing up to begin another,

Mr. Schneider decided to ride on the screed-extension tube as the paver backed up. This saved him from having to run back to the other end of the job in the 110 degree weather to be ready for the next pass. For some unknown reason, as Mr. Schneider was sitting on the extension tube, the screed began to retract, crushing him. The retraction stopped, and the screed extended slightly, but then it retracted again crushing Mr. Schneider a second time and causing serious injury. After hearing Mr. Schneider's screams and while the accident was still in progress, two of the operators on the paver/screed tried repeatedly and without success to stop the retraction by operating the toggle switches at their various stations. It is unknown why the retraction finally stopped.

Mr. Schneider filed suit alleging strict product liability and negligence. Caterpillar moved for summary judgment, arguing that Colorado's statute of repose, Colo. Rev. Stat. § 13-80-107, bars claims against it seven years after the equipment is first put into use.[2] The parties do not dispute that the machine was first put into use more than seven years before Mr. Schneider's accident. The

---

[2]     Colo. Rev. Stat. § 13-80-107(b) provides in pertinent part:

> no such [product liability action for personal injury] shall be brought on a claim arising more than seven years after such equipment was first used for its intended purpose by someone not engaged in the business of manufacturing, selling, or leasing such equipment, except when the claim arises from injury due to hidden defects . . . ."

dispute here centers on whether, as a matter of law, there was a "hidden defect" in the screed that would except this action from the statute of repose.[3]

In its order, the district court carefully analyzed whether the screed was "manufacturing equipment" and concluded that it was. That conclusion is not at issue on appeal. We turn, therefore, to whether, as a matter of law, there was no genuine issue of material fact as to the existence of a hidden defect in the paver/screed.

As the forum state, Colorado provides the substantive law in this diversity case, and whether that law was properly determined by the district court is a question we review de novo. *Eaton v. Jarvis Prods.*, 965 F.2d 922, 925 (10th Cir. 1992). Because Caterpillar is the moving party, it had the burden of showing that it was entitled to summary judgment, *id.* at 925-26, while Mr. Schneider is given considerable latitude to prove the existence of a factual controversy, *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1182 (10th Cir. 2003).

> This court reviews a summary judgment decision *de novo*, viewing the evidence in the light most favorable to the non-moving party. Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show

---

[3] Unlike a statute of limitations, a statute of repose may bar a claim before the injury occurs. A statute of repose limits the liability of a manufacturer or seller by setting a fixed time after the sale or first use of an item beyond which the manufacturer or seller of that item will not be held liable.

*Anderson v. M.W. Kellogg Co.*, 766 P.2d 637, 640 (Colo. 1988) (en banc) (citation omitted).

that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."

*Archuleta v. Wal-Mart Stores, Inc.*, 543 F.3d 1226, 1231 (10th Cir. 2008) (quoting Fed. R. Civ. P. 56(c)) (citation omitted).

Colorado law defines a defect as not simply a mechanical or functional defect but "one which makes the product unreasonably dangerous." *Wayda v. Comet Int'l Corp.*, 738 P.2d 391, 393 (Colo. App. 1987), *overruled on other grounds by Anderson v. M.W. Kellogg Co.*, 766 P.2d 637, 643 (Colo. 1988) (en banc). "[F]or a product to contain a 'hidden defect[,]' . . . it must have a defect that creates an unreasonably dangerous condition which is not readily apparent." *Wayda*, 738 P.2d at 393. Something that is an "open and obvious danger" is not a hidden defect. *Compare Eaton*, 965 F.2d at 929 (lack of trigger guard on large hydraulic slaughter-house-meat cutter too obviously dangerous to be hidden); *Anderson*, 766 P.2d at 644 (same for lack of guard where the underside of a conveyor belt met a head pulley); *with Wayda*, 738 P.2d at 393 (issue of fact as to whether erratic timing of rotation arm inside vacuum thermo-forming machine was unreasonably dangerous); *Niemet v. Gen. Elec. Co.*, 843 P.2d 87, 91 (Colo. App. 1992) (defect hidden where it could not be discovered until transformer was cut in half).

The test for determining whether a defect is hidden is an objective one and requires a judgment as to "whether the defect was not readily apparent or

discoverable by a reasonably prudent user." *Anderson*, 766 P.2d at 643. Other than in a summary judgment context where the movant may be able to show that no genuine issue of material fact exists as to the presence of a hidden defect, *see, e.g.*, *Eaton*, 965 F.2d at 928; *Anderson*, 766 P.2d at 644, the hidden-defect question is normally a question of fact, *Urban v. Beloit Corp.*, 711 P.2d 685, 687 (Colo. 1985) (en banc); *Wayda*, 738 P.2d at 393.

On appeal, Mr. Schneider argues that the lack of any clear means to stop the screed retraction was hidden and not obvious. The district court disagreed, holding:

> The first alleged defect – no way to override an inadvertent activation of one of the screed extension activation switches – cannot be considered hidden. At the February 28, 2008, hearing, Plaintiff repeatedly described the defect as "failure to provide clear means" to override an accidental switch activation. Plaintiff's expert, Olaf [sic] Jacobson, likewise described the defect as the failure to include "clear identification of the shut off procedure and an easily accessible, clearly marked emergency button," "a red mushroom shaped button," "an emergency shutoff switch that is clearly identified," or "clear means to stop the screed retraction." Compared to *Niemet [v. General Electric Co.]*, 843 P.2d 87 – in which the defect in an electrical transformer was not discoverable until the transformer was cut in half – the lack of a "clearly marked" override switch, "red mushroom shaped button" or other "clear means" to stop the screed retraction would have been immediately obvious had anyone bothered to look.

Aplt. App. Vol. II at 437-38.

As noted above, summary judgment is inappropriate if there is a genuine issue as to any material fact. *See* Fed. R. Civ. P. 56(c). Mr. Schneider argues

that a genuine issue of material fact exists as to whether the design of the paver/screed contained a hidden defect. We agree.

The dispute over whether there was a hidden defect results from the contrary evidence provided by the expert witnesses for each side. *See Wayda*, 738 P.2d at 393 (holding professional engineer's conclusion that machine at issue was defective raised genuine issues of fact regarding the existence of a hidden defect). We refer here only to the major conflict in the evidence from each party.

After studying the physical evidence, the design of the paver, and the actions of the various individuals involved, Olof Jacobson, a mechanical engineer retained by Mr. Schneider, concluded that "[t]he injury was caused by defects in the design of the Caterpillar paver." Aplt. App. Vol. I at 165. Further,

> [t]he control system was designed defectively, resulting in unexpected response to operator actions when more than one toggle switch was actuated. The function and response of the controls is not described in operating manuals, nor is the switch operation described to operators in training provided by Caterpillar. This defect in the control system was hidden and did not become apparent until the accident was in progress. Caterpillar did not consider this defect during design and Caterpillar was apparently not aware of how the control system would respond until testing was performed in 2007.

*Id.* Mr. Jacobson further concluded:

> Proper design of a control system for such a machine should include a master control or an emergency shutoff switch that is clearly identified on the machine and in the operator's manuals. In an emergency, it should be clear to all personnel how to stop the screed retraction. As designed, the subject paver control system had no means to stop the screed from retracting. Once it became known that J.R. Schneider was being injured, the operators did not know how to

> stop the screed from moving. This confusion is the result of defective design of the control system.

*Id.* at 162. "This defect is hidden and not obvious." *Id.* at 163.

In contrast to this evidence, Michael Netka, the worldwide product support manager for Caterpillar Paving Products Inc., testified that, in preparation for his deposition, he had tested the screed controls to determine what would happen if one of the screed controls was activated to move the screed in an outward direction and then a second control was activated to retract the screed. As happened in the accident, nothing happened when the second control was activated. The screed continued moving in the original direction as dictated by the operation of the first switch. *Id.* at 251-52. Mr. Netka testified that he did not believe the absence of an override function on the screed controls to be dangerous. *Id.* at 253. He further testified that he saw no problem in the fact that none of Caterpillar's literature points out to a user that there is no override facility for the screed controls. *Id.* at 253-54.

As mentioned, the district court held that the lack of a "way to override an inadvertent activation of one of the screed activation switches [] cannot be considered hidden." *Id.* Vol. II at 437. As support the district court cited the argument of Mr. Schneider's counsel at the summary-judgment hearing who had described the defect as "failure to provide clear means" to override. *Id.* The court also referred to Mr. Jacobson's evidence describing the defect as the

"failure to include 'clear identification of the shut off procedure and an easily accessible, clearly marked emergency button,' 'a red mushroom shaped button,' 'an emergency shutoff switch that is clearly identified,' or 'a clear means to stop the screed retraction.'" *Id.* at 437-38. The court concluded that the absence of any of these "clearly marked," or "red mushroom-shaped button" or other "clear means" to interfere with the screed extension "would have been immediately obvious had anyone bothered to look." *Id.* at 438.

We think this conclusion misses an essential point, namely that, until this accident happened, no one knew that there was no override capacity to reverse the operation of the screeds apart from reversing the toggle switch that had caused the operation in the first place. A reasonably prudent user would notice the absence of any stop button, including a red mushroom-shaped one, only if it was apparent that such a button should be present in the first place. But it was not apparent simply by looking at the paver, the screeds, or the toggle switches or by operating them in a normal way that the screed and the paver were designed so that there was no capacity for one switch to override another. In fact, Mr. Netka, the Caterpillar expert, had to study the technical specifications of the paver and perform his own field test before he clearly understood the screed-control situation. Contrary to the district court's theory, we are not persuaded that "had anyone bothered to look," they would have noticed this defect. We think, therefore, that there is a genuine issue of material fact as to whether the

-10-

paver/screed contained a hidden defect.  Because this record, taken as a whole, could ultimately lead a rational trier of fact to find for Mr. Schneider, a genuine issue of material fact remains for trial.  *Cf. Ulissey v. Shvartsman*, 61 F.3d 805, 808 (10th Cir. 1995).

The judgment of the district court is REVERSED, and this case is REMANDED for further proceedings in accordance with this order and judgment.

Entered for the Court


Stephen H. Anderson
Circuit Judge