25CA0200 Lansford v Poudre River 03-05-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA0200
Weld County District Court No. 22CV30450
Honorable Shannon D. Lyons, Judge

Zelma Lansford, individually and as personal representative for the Estate of Harold Lansford, and Harold and Landford Trustees, Lansford Family Trust, U/D/T January 3, 2020 F/B/O The Lansford Trust,

Plaintiffs-Appellants and Cross-Appellees,

v.

Poudre River Ranch Company Inc. and Ed Orr,

Defendants-Appellees and Cross-Appellants.

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE LIPINSKY
Tow and Berger*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced March 5, 2026

Martinez Law Colorado, LLC, Anna N. Martinez, Denver, Colorado; Vanguard Justice LLC, Elisabeth L. Owen, Denver, Colorado, for Plaintiffs-Appellants and Cross-Appellees

Fox Rothschild LLP, Marsha M. Piccone, Risa B. Brown, Denver, Colorado; Lasater & Martin, P.C., Janet B. Martin, Greenwood Village, Colorado, for Defendants-Appellees and Cross-Appellants

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1     Harold and Zelma Lansford lived on property in Greeley (the property) that their family trust — the Lansford Family Trust — had purchased. The day after they moved in, Mr. Lansford saw water flowing onto the property. In response, he contacted various individuals, including a neighboring farmer, an employee of the City of Greeley, and a representative of the developers of the Lansfords' subdivision (the subdivision). But the water kept coming.

¶ 2     During a rainstorm thirteen years later, the water turned into a torrent and the property was flooded. The Lansfords filed suit against the developers of the subdivision, alleging that the subdivision's drainage facilities had design and construction defects.

¶ 3     The case proceeded to trial. At the conclusion of trial, the jury found in favor of the Lansfords. But the trial court took the case away from the jury and entered a judgment notwithstanding the verdict (JNOV) in favor of the developers after determining that the Lansfords had waited too long to sue under the applicable statute of limitations. The trial court concluded, however, that the applicable statute of repose does not apply to developers.

¶ 4     Zelma Lansford, individually and as personal representative for the Estate of Harold Lansford, and the Lansford Family Trust, U/D/T January 3, 2020 F/B/O The Lansford Trust (jointly, the Lansfords), appeal the trial court's entry of JNOV in favor of the developers — Poudre River Ranch Company Inc. and Ed Orr (jointly, the Poudre defendants).  In their cross-appeal, the Poudre defendants argue that, even if we disagree with the trial court's analysis of the statute of limitations, the statute of repose for construction defect actions bars the Lansfords' claims and that the trial court erred by entering judgment in favor of the Lansfords on their noneconomic damage claims.

¶ 5     Applying the statute of repose, we affirm the trial court's entry of JNOV, albeit on different grounds.

I.     Background

A.     Facts

¶ 6     The Poudre defendants' development work at the subdivision included planning its infrastructure, which encompassed "everything from [the location of] the streets and the sidewalks" to where "the storm drains [would] go."  They determined "where utilities and water, and sewer would hook up" so the lots in the

2

subdivision would be "permit ready" for the "homebuilders who [would] come in and . . . construct home[s] for various homebuyers." Construction of the subdivision was substantially completed in 2006.

¶ 7 In 2008, Zelma and Harold Lansford moved onto the property, which was located in the subdivision. The next day, Mr. Lansford saw a "noticeable" and "unrestrained flow" of water from the farm "right into [the property's] back yard."

¶ 8 Water continued to flow onto the property without materially damaging it until July 2021, when a ten-to-twenty-five-year flood (the 2021 flood) caused water to pour into the property's basement. The basement filled with "six feet of water and mud," and the force of the onrushing water caused the door leading to the basement to bend and break in half.

### B. Procedural History

¶ 9 On June 29, 2022, the Lansfords sued the Poudre defendants and others for allegedly designing and constructing defective stormwater drainage facilities at the subdivision. (The Poudre defendants were the only remaining defendants by the time of trial.) The Lansfords pleaded claims for negligence, nuisance, and

trespass, in which they sought to recover the costs of remedying the property damage caused by the 2021 flood.

### 1. The Trial

¶ 10    At the close of the Lansfords' case, the Poudre defendants moved for a directed verdict, asserting that the Lansfords' claims were time barred. (The Poudre defendants had previously asserted their timeliness arguments in an unsuccessful motion for summary judgment.) The Poudre defendants argued that, under the Construction Defect Action Reform Act (CDARA), §§ 13-20-801 to -808, C.R.S. 2025, the Lansfords had been required to assert their claims within two years of accrual. *See* § 13-80-104(1)(a), C.R.S. 2025. According to the Poudre defendants, the Lansfords' claims accrued when Mr. Lansford observed water flowing onto the property thirteen years before the 2021 flood, and, for that reason, the Lansfords filed their lawsuit years too late.

¶ 11    Alternatively, the Poudre defendants asserted that the Lansfords' claims were untimely under CDARA's statute of repose, section 13-80-104(1)(a). That subsection of the statute bars any action against an "architect, contractor, builder or builder vendor, engineer, or inspector performing or furnishing the design,

4

planning, supervision, inspection, construction, or observation of construction of any improvement to real property" brought more than six years "after the substantial completion of the improvement to the real property." § 13-80-104(1)(a).

¶ 12     In their response to the Poudre defendants' motion for directed verdict, the Lansfords argued, as relevant here, that CDARA's statute of repose does not apply to claims against real estate developers like the Poudre defendants.

¶ 13     The trial court denied the Poudre defendants' motion for directed verdict, in relevant part. (The trial court dismissed the Lansfords' trespass claim because the evidence did not establish they had been harmed through an intentional act.) The trial court concluded that the Lansfords were entitled to a jury trial on their CDARA claims and agreed with them that, although the Poudre defendants were entitled to present their statute of limitations defense to the jury, CDARA's statute of repose did not apply to the Poudre defendants because they were developers.

¶ 14     The jury found in favor of the Lansfords and awarded them $140,000 for their economic losses and $750,000 for their noneconomic losses. The jury also found that the statute of

limitations did not bar the Lansfords' claims. The court did not provide the jury with an instruction or a verdict form on the statute of repose.

### 2. The JNOV Motion

¶ 15 In their motion for a JNOV, the Poudre defendants reiterated their argument that the Lansfords' claims were untimely under both CDARA's statute of limitations and statute of repose. In the alternative, the Poudre defendants asserted that the jury's award of $750,000 in noneconomic damages to the Lansfords exceeded CDARA's damages cap.

### 3. The JNOV Order

¶ 16 In its order granting the JNOV motion, the trial court reversed course on the applicability of CDARA's statute of limitations. The trial court concluded that it had erred by denying the Poudre defendants' motion for directed verdict. It found that the Lansfords' claims were untimely under CDARA's statute of limitations. However, the trial court reaffirmed its prior determination that "the statute of repose is not a defense available for developers" like the Poudre defendants.

¶ 17    The trial court then vacated the jury verdict and entered judgment in favor of the Poudre defendants.  In light of its determination that the CDARA statute of limitations barred the Lansfords' claims, the court did not reach the Poudre defendants' argument regarding the statutory cap on noneconomic damages in CDARA cases.

## C.    This Appeal

¶ 18    On appeal, the Lansfords challenge the trial court's grant of JNOV because the jury verdict was "well-supported by evidence."  In addition, the Lansfords contend that the trial judge created the appearance of bias or was actually biased when he entered the JNOV because of his alleged "close relationship" with the Poudre defendants.

¶ 19    In a cross-appeal, the Poudre defendants argue, as relevant here, that the trial court erred by not applying CDARA's six-year statute of repose as an alternative ground for concluding that the Lansfords' claims were untimely.  Further, the Poudre defendants assert that, if we reverse and reinstate the jury verdict and remand the case to the trial court, we should instruct the trial court to cap

7

the Lansfords' noneconomic damages award at the statutory maximum.

## II.     Analysis

### A.     JNOV

#### 1.     Standard of Review

¶ 20     Under C.R.C.P. 59(e), a court may grant a JNOV in the absence of a "genuine issue as to any material fact and [if] the moving party [is] entitled to judgment as a matter of law."  C.R.C.P. 59(e)(2).

¶ 21     Because the facts underlying the JNOV order are undisputed, we review de novo the trial court's ruling on the JNOV motion.  *See M.G. Dyess, Inc. v. MarkWest Liberty Midstream & Res., L.L.C.*, 2022 COA 108, ¶ 27, 522 P.3d 204, 211.

#### 2.     Preservation

¶ 22     Before we address the merits of the Poudre defendants' statute of repose argument, we turn to the Lansfords' contention that the Poudre defendants failed to preserve — and therefore waived — that argument.  The Lansfords assert that the Poudre defendants are precluded from arguing the statute of repose on appeal because

they did not request a jury instruction or a verdict on their statute of repose affirmative defense. We disagree.

¶ 23 The Poudre defendants are entitled to raise the statute of repose on appeal because they pleaded it in their answer and presented arguments regarding it in their motion for a directed verdict. By raising the issue in that motion, the Poudre defendants properly gave the trial court an opportunity to rule on the statute's applicability (and the court did so). *See Tisch v. Tisch*, 2019 COA 41, ¶ 48, 439 P.3d 89, 102 (To preserve an issue brought "in a denied motion for summary judgment, a party must raise the issue in a motion for a directed verdict or [JNOV] during trial. Put differently, the party must give the trial court an opportunity to rule on the issue as a matter of law at trial." (citation omitted)). The Poudre defendants were not required to raise the issue again in the trial court after presenting it in their motion for a directed verdict. *See Maes v. Lakeview Assocs., Ltd.*, 892 P.2d 375, 376 (Colo. App. 1994) ("A party is not required to prepare and submit jury instructions which are in conflict with a pre-trial ruling or otherwise continuously object during trial to preserve a pre-trial ruling for appeal."), *aff'd*, 907 P.2d 580 (Colo. 1995).

¶ 24    Accordingly, we now turn to the merits of the Poudre defendants' statute of repose argument.

### 3.    The CDARA Statute of Repose Bars the Lansfords' Claims

¶ 25    The Lansfords contend that the trial court erred by granting the JNOV motion for two reasons — (1) because the jury reasonably found that the Poudre defendants failed to prove their statute of limitations defense and (2) because the design and construction defects that caused the Lansfords' damages were latent or not discoverable by reasonable inspection.  We disagree that the trial court erred, but for reasons different from those supporting the JNOV order.

¶ 26    CDARA applies to "civil action[s] . . . brought against a construction professional . . . for damages or loss to, or the loss of use of, real or personal property or personal injury caused by a defect in the design or construction of an improvement to real property."  § 13-20-802.5(1), C.R.S. 2025.  In enacting CDARA, the General Assembly sought to "streamlin[e] construction litigation," *Smith v. Exec. Custom Homes, Inc.*, 230 P.3d 1186, 1190 (Colo. 2010), and to "encourage the timely resolution of construction

disputes," *Thermo Dev., Inc. v. Cent. Masonry Corp.*, 195 P.3d 1166, 1170 (Colo. App. 2008), *overruled on other grounds by, Goodman v. Heritage Builders, Inc.*, 2017 CO 13, 390 P.3d 398.

¶ 27    Section 13-80-104(1)(a) specifies that "in no case shall . . . an action" against "any architect, contractor, builder or builder vendor, engineer, or inspector performing or furnishing the design, planning, supervision, inspection, construction, or observation of construction of any improvement to real property" be brought "more than six years after the substantial completion of the improvement to the real property."  (The limited exception applicable to "cause[s] of action aris[ing] during the fifth or sixth year after substantial completion of the improvement to real property," § 13-80-104(2), does not apply here.)

¶ 28    Unlike a statute of limitations, which "takes effect when a claim arises, . . . a statute of repose bars the bringing of a suit after a set period of time, regardless whether an injury has occurred or a claim has arisen."  *Two Denv. Highlands Ltd. Liab. Ltd. P'ship v. Stanley Structures, Inc.*, 12 P.3d 819, 821 (Colo. App. 2000); *see Lewis v. Taylor*, 2016 CO 48, ¶ 22, 375 P.3d 1205, 1209 (A statute of repose "limits the right to bring a claim to a specific time period

that begins to run not when the claim accrues, but when the defendant's last culpable act or omission takes place.").

¶ 29 Because there is no dispute that the Lansfords filed their lawsuit against the Poudre defendants more than six years after substantial completion of the subdivision, their CDARA claims are barred if the statute of repose applies to the Poudre defendants.

¶ 30 In the JNOV order, the trial court determined that the General Assembly intentionally omitted "developers" from the list of possible defendants in section 13-80-104(1)(a). The court said that the General Assembly was "aware of the distinction between developers and the other construction professionals identified in the statute of repose because it included 'developer' among the professionals listed under the definition of 'constructional [sic] professional'" in section 13-20-802.5(4).

¶ 31 Thus, in the trial court's view, the General Assembly purposefully excluded developers from section 13-80-104 because it "could have, if it intended, included 'developer' among the other professionals listed in the statute of repose." The trial court noted that, alternatively, the General Assembly "could have simply used the phrase, 'all actions against any constructional [sic] professional

12

as defined at [section] 13-20-802.5(4)'" in section 13-80-104(1)(a), which "would have been simpler and included all construction professionals, including developers."

¶ 32     For these reasons, the trial court concluded that "the statute of repose is not a defense available for developers, even though it is available to other professionals engaged in the construction of improvements to real property."

¶ 33     Although the trial court's textual analysis is not an unreasonable reading of CDARA, the court was not writing on a blank slate. The decisions interpreting the statute of repose, including a decision by the Colorado Supreme Court, make clear that its applicability does not hinge on whether a defendant comes within the list of entities contained in section 13-80-104(1)(a) but, instead, whether the plaintiff is seeking a remedy for construction defects. CDARA "was intended to limit actions against *building professionals* . . . for claims of injury arising from defects in the improvement they create." *Irwin v. Elam Constr., Inc.*, 793 P.2d 609, 611 (Colo. App. 1990) (emphasis added). "The conduct at issue must originate from an activity that the statute was designed to protect, namely, the process of building an improvement to real

13

property." *Two Denv. Highlands Ltd. Liab. Ltd. P'ship*, 12 P.3d at 821.

¶ 34     *Two Denver Highlands* concerned claims against the company that had "designed, manufactured, and installed precast concrete products for use in the structural framework" of the plaintiff's parking garage. *Id.* at 820. The plaintiff garage owner sued the defendant after discovering that certain of the concrete products used in the construction of the parking garage were defective and consequently rendered the garage unstable. *Id.* The defendant moved for summary judgment, arguing that CDARA's statute of repose barred the plaintiff's action. *Id.* at 820-21. The district court agreed and granted the motion. *Id.* at 821. The garage owner appealed. *Id.*

¶ 35     The central issue in the appeal was "whether a manufacturer who has also designed and installed an allegedly defective product in an improvement to real property is exempt from liability under [the CDARA statute of repose] six years after the substantial completion of the improvement." *Id.* at 822.

¶ 36     The division affirmed after concluding that the statute of repose applies to claims asserted against defendants "involved in

the actual process of construction" and that a defendant's "designation alone, such as 'manufacturer,' does not determine whether [that] defendant is protected. A court must examine the activities performed by the defendant in the building process." *Id.* The division explained that, "[u]nder this 'activity analysis,' a court must not only examine the label placed on a party who was involved in the building process but must also look to whether that individual's actions f[e]ll within the statute's protected class of activities." *Id.* at 823.

¶ 37 Applying this functional approach, the division noted "it is undisputed that although defendant was the manufacturer of the product, it also engaged in a substantial off-site and on-site role in the construction of the garage. . . . Experts for both parties agreed that defendant, using the products it manufactured, had erected the garage." *Id.* The division concluded that the defendant's actions "fell within the class of activities delineated in [section] 13-80-104, specifically, 'design' and 'construction' of an improvement to real property" and that, accordingly, the defendant was "one of the persons specified in [section] 13-80-104, a 'builder.'" *Id.* For these reasons, the division affirmed the trial

15

court's determination that "defendant was protected by the construction statute of repose." *Id.*

¶ 38     The supreme court's interpretation of the statute of repose in *Anderson v. M.W. Kellogg Co.*, 766 P.2d 637, 640-41 (Colo. 1988), informed the division's analysis in *Two Denver Highlands*. *Anderson* arose from an accident in which the plaintiff was seriously injured when his arm was caught in a conveyor at the manufacturing plant where he worked. *Id.* at 639.  The defendant's predecessor in interest "performed the engineering, design, and construction management for the entire . . . plant, including the construction of the . . . conveyor." *Id.*  The conveyor went into operation twenty years before the accident. *Id.*

¶ 39     The defendant successfully moved for summary judgment premised on, among other theories, its argument that the CDARA statute of repose barred the plaintiff's claims. *Id.*  On appeal, the plaintiff argued, as relevant here, that the statute of repose did not apply to manufacturers such as the defendant because it did not include manufacturers in its "list of protected persons." *Id.* at 641.

¶ 40     The supreme court disagreed and focused on whether the defendant had engaged in the type of conduct described in the

statute. "We need not be concerned with attempting to define any subtle distinctions between the defendant's role as a 'manufacturer' of the conveyor and its conduct as a 'contractor' or 'builder' of the conveyor" because the defendant "was performing exactly the conduct described by the statute: 'furnishing the design, planning, supervision, inspection, construction, or observation of construction of . . . [an] improvement to real property.'" *Id.* (quoting § 13-80-127(1)(a), C.R.S. 1985 (current version at § 13-80-104)).

¶ 41 Turning to the evidence regarding the defendant's activities at the plant, the supreme court observed that the defendant "acted as both a general contractor and engineer for the construction of the plant[;] contracted out much of the construction work for the . . . conveyor"; and "exercised control and supervision over the design, construction, assembly, and installation of the . . . conveyor." *Id.* Accordingly, the supreme court concluded that CDARA's statute of repose barred the plaintiff's claims. *See id.*

¶ 42 Following the reasoning of *Two Denver Highlands* and *Anderson*, we hold that the Lansfords' claims are subject to the CDARA statute of repose. They sought a remedy for the Poudre defendants' alleged negligent design and construction of the

17

subdivision's drainage facilities.  CDARA applies to claims arising from this type of activity — "actual construction, or modification of construction, of an improvement to real property."  *Gleason v. Becker-Johnson Assocs., Inc.*, 916 P.2d 662, 665 (Colo. App. 1996). Moreover, as noted above, the undisputed evidence at trial established that the Poudre defendants planned the subdivision's infrastructure, including its drainage facilities, so the subdivision's lots would be "permit ready" for the homebuilders.  As Orr testified, the Poudre defendants "[laid] out all of the infrastructure for [the homebuilders] to come and build the homes" on the subdivision's lots.

¶ 43    Accordingly, the Poudre defendants were entitled to JNOV because the CDARA statute of repose barred the Lansfords' claims. Thus, we affirm the trial court's grant of JNOV, albeit on different grounds from those underlying the JNOV order.  In light of this determination, we need not address the Poudre defendants' arguments regarding the statute of limitations and the Lansfords' noneconomic damages claim.

## B.    Judicial Bias

### 1.    Standard of Review

¶ 44    "In a civil case, the trial judge's decision whether to disqualify himself . . . is discretionary and will not be reversed unless an abuse of discretion is shown." *Black v. Black*, 2020 COA 64M, ¶ 118, 482 P.3d 460, 485 (quoting *Zoline v. Telluride Lodge Ass'n*, 732 P.2d 635, 639 (Colo. 1987)).

### 2.    Applicable Law

¶ 45    C.R.C.P. 97 states, in relevant part, that "[a] judge shall be disqualified in an action in which he is interested or prejudiced . . . or is so related or connected with any party or his attorney as to render it improper for him to sit on the trial, appeal, or other proceeding therein."  The Rule is consistent with the principle that "[a] judge must not preside over a case if [the judge] is unable to be impartial." *People in Interest of A.P.*, 2022 CO 24, ¶ 25, 526 P.3d 177, 183.  "But, '[u]nless a reasonable person could infer that the judge would in all probability be prejudiced against [a party], the judge's duty is to sit on the case.'" *Id.* (quoting *Smith v. Dist. Ct.*, 629 P.2d 1055, 1056 (Colo. 1981)).

¶ 46    A judge may be disqualified for perceived bias or actual bias. "Under C.R.C.P. 97, disqualification is appropriate when the motion and supporting affidavits allege sufficient facts from which it may reasonably be inferred that the judge is prejudiced or biased, or appears to be prejudiced or biased, against a party or counsel to the litigation." *Bocian v. Owners Ins. Co.*, 2020 COA 98, ¶ 13, 482 P.3d 502, 509. "The record must clearly demonstrate the alleged bias; mere speculative statements and conclusions aren't enough." *People v. Jones*, 2025 COA 43, ¶ 35, 571 P.3d 947, 955 (*cert. granted* Jan. 20, 2026); *see Bocian*, ¶ 15, 482 P.3d at 509 ("Where the motion and supporting affidavits merely allege opinions or conclusions, unsubstantiated by facts supporting a reasonable inference of actual or apparent bias or prejudice, they are not legally sufficient to require disqualification."); *People v. Schupper*, 2014 COA 80M, ¶ 59, 353 P.3d 880, 894-95 (For bias to warrant reversal, the "record must clearly establish bias," meaning that "more than mere speculation concerning the possibility of prejudice must be demonstrated." (quoting *People v. Coria*, 937 P.2d 386, 391 (Colo. 1997))).

¶ 47     When a party moves for disqualification based on the judge's actual bias, "the focus must be 'on the subjective motivations of the judge.'" *Rea v. Corr. Corp. of Am.*, 2012 COA 11, ¶ 24, 272 P.3d 1143, 1147 (quoting *People in Interest of A.G.*, 262 P.3d 646, 651 (Colo. 2011)). "To disqualify a judge for actual bias, a party must show that the judge had a 'substantial bent of mind against him,'" *Jones*, ¶ 35, 571 P.3d at 955 (quoting *People v. Drake*, 748 P.2d 1237, 1249 (Colo. 1988)), or a "deep-seated favoritism or antagonism that would make fair judgment impossible," *id.* (quoting *People in Interest of A.P.*, ¶ 31, 526 P.3d at 184). In short, "[a]ctual bias exists if 'a judge has a bias or prejudice that in all probability will prevent him . . . from dealing fairly with a party.'" *Bocian*, ¶ 14, 482 P.3d at 509 (quoting *People v. Julien*, 47 P.3d 1194, 1197 (Colo. 2002)).

¶ 48     A party may waive a perceived basis claim but not an actual bias claim. *People in Interest of A.G.*, 262 P.3d at 650; *see Jones*, ¶ 34, 571 P.3d at 955 (When "defense counsel doesn't move for disqualification, the defendant waives any argument that the judge should have disqualified himself based on an appearance of impropriety, and [the appellate court] review[s] only for actual

bias."); *Rea*, ¶ 22, 272 P.3d at 1147 ("Disqualification for an appearance of impropriety must be distinguished from disqualification for actual bias. While the former may be waived, the latter may not.").

### 3. Additional Facts

¶ 49 One week before trial, the Poudre defendants' counsel learned that the trial judge lived in the same subdivision as the Lansfords and had purchased his home from Poudre River Ranch Company. The Poudre defendants' counsel disclosed this information to the Lansfords' counsel and asked the trial court to set a hearing on the matter.

¶ 50 The trial court attempted to conduct a virtual hearing on the bias issue, but an electrical outage disrupted it. "In recognition of the short time between [the failed virtual hearing] and the beginning of trial," the trial judge issued an order (the disclosure order) explaining his home purchase from Poudre River Ranch in 2003 and his lack of interactions with Orr. In the disclosure order, the trial judge reported the following:

> I do not know [the Lansfords] and have not had occasion to interact with them. To the best of my knowledge, we have never met.

22

Their home is located about four blocks from my home, in a part of the subdivision that was developed several years after the majority of homes on my street. My home has never flooded. . . . Prior to the filing of this case, I was unaware of the flooding event described in the [c]omplaint.

Long before [the Poudre defendants] raised the [bias] issue, the [c]ourt considered whether either C.R.C.P. 97 or the Code of Judicial Conduct Canon 2.11 suggested that disqualification might be required. The [c]ourt was satisfied, and remains so, that a 20[-]year[-]old arms-length business transaction with [the Poudre defendants] and shared residence in the same neighborhood as [the Lansfords] is not grounds for disqualification under either the Rule or the judicial canons.

In addition, the trial court offered to "entertain additional questions" on the bias issue on the morning of trial.

¶ 51    But the Lansfords did not raise any questions concerning the trial judge's possible bias on the morning of trial and did not move to disqualify him until two weeks after the trial court granted the JNOV. (In the motion to disqualify, the Lansfords also requested that the trial court vacate the JNOV order.) The trial court, however, said it would not rule on the disqualification motion

23

because the Lansfords' notice of appeal had divested it of jurisdiction over this case.

### 4.    The Lansfords' Bias Argument

¶ 52    The Lansfords contend that the trial judge acted with perceived or actual bias when he entered JNOV because of his alleged "close relationship" with the Poudre defendants. Specifically, the Lansfords assert that the trial judge should have disqualified himself because

- he had a relationship with the Poudre defendants dating back to his home purchase;

- any judgment entered against the Poudre defendants would affect the value of the trial judge's home and his homeowners' insurance rates;

- he had personal knowledge of the disputed facts; and

- he expressed bias when he said to Orr on the record, "I know most of the neighborhoods in [Greeley] and I'm biased, but it's my opinion that [Poudre River Ranch's properties were] the premier development in [Greeley]. You should be rightfully proud of it."

24

¶ 53    We conclude that the Lansfords waived their perceived bias argument and failed to establish actual bias.

      a.    The Lansfords Waived Their Perceived Bias Argument

¶ 54    Although no rule specifies when a disqualification motion must be filed, "good faith and orderly process dictate that if grounds for disqualification are known at the time the suit is filed and a party desires to proceed thereon, a motion to disqualify should be filed prior to taking any other steps in the case." *People in Interest of A.G.*, 262 P.3d at 652 (quoting *Aaberg v. Dist. Ct.*, 319 P.2d 491, 494 (Colo. 1957)).  Significantly, "when a party knows of grounds for disqualification but waits to file a motion until after an adverse judgment has been issued, the motion is barred by waiver."  *Id.*

¶ 55    We acknowledge that, at the time they filed their complaint, the Lansfords did not know the facts that they later argued required the trial judge's disqualification.  But they learned those facts before trial.  Yet they did not move for the judge's disqualification until he ruled against them by entering the JNOV order.  Moreover, the Lansfords declined the trial judge's invitation to inquire on the first day of trial into the facts outlined in the disclosure order.

Under these circumstances, the Lansfords waived their argument that the trial judge acted with perceived bias. *See id.*

### b. The Lansfords Did Not Establish Actual Bias

¶ 56 For four reasons, we disagree with the Lansfords' contention that the trial judge acted with actual bias when he entered the JNOV order.

¶ 57 First, the trial judge's "prior relationship" with the Poudre defendants arose from an arm's-length business transaction that occurred decades before he granted the JNOV.

¶ 58 Second, the Lansfords do not provide any support for their allegation that the trial judge only entered the JNOV because a judgment in favor of the Lansfords would have affected the trial judge's home value and homeowners' insurance rates.

¶ 59 Third, the trial judge's statements in the disclosure order undercut the Lansfords' accusation that the trial judge possessed personal knowledge of facts relevant to the Poudre defendants' statute of limitations defense. In the disclosure order, the trial judge reported that he had never met the Lansfords and he was unaware of the 2021 flood until he read about it in the complaint.

26

¶ 60    Fourth, the Lansfords' allegation that the trial judge "expressed bias" on the record when he said that the Poudre defendants should be proud of their work in developing the subdivision in which he and the Lansfords lived does not establish that the trial judge could not adjudicate the case fairly. Before making the statement that the Lansfords quoted, the trial court said, "I'm very sorry you had to experience this, Mr. and Mrs. Lansford, nobody wants to see their home be flooded." These statements did not come close to showing that the trial judge had "a bias or prejudice that in all probability [would] prevent him . . . from dealing fairly with a party." *Julien*, 47 P.3d at 1197.

¶ 61    Although it would have been preferable if the trial judge had not praised the quality of Poudre River Ranch Company's work on the subdivision, his statements did not show he "had a 'substantial bent of mind against'" the Lansfords, *Jones*, ¶ 35, 571 P.3d at 955 (quoting *Drake*, 748 P.2d at 1249), or a "deep-seated favoritism or antagonism that would make fair judgment impossible," *id.* (quoting *People in Interest of A.P.*, ¶ 31, 526 P.3d at 184).

¶ 62    In addition, in the background section of their opening brief, the Lansfords allege that the trial judge (1) "expressed his opinion

as to the value of the Lansfords' case" when he said there was "no evidence to support [an award of noneconomic] damages of $500,000"; (2) was "visibly dismayed" when he read the jury's verdict; and (3) improperly requested a copy of the transcript of Mr. Lansford's testimony during what should have been "a perfunctory conversation about the deadlines" for post-trial motions. But the Lansfords do not reassert or expand on those undeveloped allegations in the argument section of their brief or explain how they support the Lansfords' bias argument. In any event, "[j]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases" and "[e]xpressions of impatience, dissatisfaction, annoyance, and even anger" do not establish bias. *People in Interest of A.P.*, ¶ 31, 526 P.3d at 184 (quoting *Liteky v. United States*, 510 U.S. 540, 555-56 (1994)).

¶ 63    For these reasons, we reject the Lansfords' actual bias argument.

## III.    Disposition

¶ 64    The judgment is affirmed.

JUDGE TOW and JUDGE BERGER concur.